UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| **VOLLIE S. GRIFFIN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. V-04-102** |
| | § | |
| **JO ANNE B. BARNHART,** | § | |
| **Commissioner of the Social** | § | |
| **Security Administration,** | § | |
| | § | |
| **Defendant.** | § | |

### MEMORANDUM & OPINION

Pending before the Court are Plaintiff Vollie Griffin's ("Griffin") Motion for Summary Judgment (Dkt. #14) and Defendant, Jo Anne B. Barnhart, the Commissioner of the Social Security Administration's ("Commissioner"), Motion for Summary Judgment (Dkt. #16).     After consideration of the motions, the entire record, and the applicable law, the Court is of the opinion that Griffin's motion should be DENIED and the Commissioner's motion should be GRANTED.

### Factual and Procedural Background

Griffin filed this action pursuant to 42 U.S.C. § 405(g) and § 1383(c) for judicial review of an unfavorable decision by the Commissioner regarding her application for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") under the Social Security Act ("the Act").

Griffin was fifty years old on the date of her hearing before the Administrative Law Judge ("ALJ") and had a twelfth grade education and attended vocational nursing school.[1]  Griffin filed an application for SSDI and SSI benefits on September 29, 2000, alleging disability as of August

---

[1] *See* Administrative Transcript ("Tr."), pg. 250.

3, 2000.[2]  On her Disability Report, she alleged disability due to low back pain from Paget's disease, abnormal magnetic resonance imaging ("MRI"), gastritis, and hiatal hernia.[3]  Prior to the onset date of her alleged disability, Griffin was employed as a licensed vocational nurse ("LVN"), an LVN supervisor, an LVN team leader, and a private duty nurse.[4]

After her application was denied at the consideration and reconsideration levels, Griffin requested a hearing, which was held in Victoria, Texas, on April 15, 2002, before ALJ Peter F. Belli. At the hearing, Griffin was represented by counsel.  Griffin testified at the hearing, as did a medical expert, William Hicks ("Hicks"), and vocational expert, Bill Brown ("Brown").[5]

When questioned by the ALJ, Griffin testified that she was not currently employed at the time of the hearing.[6]  She described the activity involved in her past employment positions, as well as the time employed at each job.[7]  Griffin explained that her last day of work was on January 8, 2000, when she stopped working as a private duty nurse because her patient died.[8]  She further explained that she did not go back to work due to back pain.[9]

Griffin testified that she was able to read for about thirty minutes at a time and was able to

---

[2] *Id.* at 57.

[3] *Id.* at 16, 64.

[4] *Id.* at 65, 251.

[5] *Id.* at 15.

[6] *See id.* at 250.

[7] *Id.* at 251-53.

[8] *Id.* at 250.

[9] *Id.* at 250-51.

concentrate "at times" when she read.[10]  She also testified that she was able to take care of her personal needs, drive, and cook.[11]  She further testified that she was able to operate the foot pedals of a car, turn the steering wheel, and open and close the car door.[12]  According to her testimony, she was able to drive to the grocery store, take items off the shelf, and open and close the refrigerator door.[13]  She testified, however, that she was unable to pick things up off of or sweep the floor and also that she was unable to carry the groceries from her car into her home.[14]

After reviewing the file and listening to the testimony, Hicks, the medical expert, testified regarding Griffin's medical condition.  Hicks opined that if Griffen were employed, she should avoid impact activities such as jumping, running, etcetera, but that she could stoop, crouch, or crawl.[15]

Following Hicks's testimony, Brown, the vocational expert, testified as to Griffin's past relevant work and potential for future employment.  Regarding Griffin's past work experience, Brown characterized Griffin's position as an LVN/LPN and an LVN/LPN team leader as heavy exertional and skilled jobs.[16]  Brown noted that Griffin's work as an LVN/LPN supervisor was a medium exertional and skilled job.[17]

After the completion of the hearing, the ALJ issued his decision denying benefits on May

---

[10] *Id.* at 270.

[11] *Id.* at 256, 257, 258, 262.

[12] *Id.* at 258, 259.

[13] *Id.*

[14] *Id.* at 259, 269.

[15] *Id.* at 276.

[16] *Id.* at 282.

[17] *Id.*

31, 2002.  The Appeals Council subsequently declined to review the ALJ's decision on September

22, 2004.[18]  The ALJ's decision thus became the Social Security Administration's final decision.

Griffin  then brought this timely action for review of the Commissioner's final decision.

### Standard of Review and Applicable Law

The Court's review of the Commissioner's final decision to deny disability benefits is limited

to two issues: (1) whether substantial record evidence supports the decision and (2) whether proper

legal standards were used to evaluate the evidence.  *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th

Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)); *Brown v. Apfel*,

192 F.3d 492, 496 (5th Cir. 1999) (quoting *McQueen v. Apfel*, 168 F.3d 152, 157 n. 2 (5th Cir.

1999)).

If the findings of fact contained in the Commissioner's decision are supported by substantial

evidence, they are conclusive and this Court must affirm.  The widely accepted definition of

"substantial evidence" is more than a mere scintilla, but less than a preponderance.  *Carey v. Apfel*,

230 F.3d 131, 135 (5th Cir. 2000).  "It means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)

(quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Carey*, 230 F.3d at 135.

In applying this standard, the court is to review the entire record, but it may not reweigh the

evidence, decide the issues de novo, or substitute the court's judgment for the Commissioner's

judgment.  *Brown*, 192 F.3d at 496.  Only if no credible evidentiary choices of medical findings exist

to support the Commissioner's decision should the court overturn it.  *Johnson v. Bowen*, 864 F.2d

340, 343-44 (5th Cir. 1988).

To claim entitlement to disability benefits, a claimant must show that she was disabled on

---

[18] *Id.* at 9-10.

or before the last day of her insured status. *Demandre v. Califano*, 591 F.2d 1088 (5th Cir. 1979). The legal standard for determining disability under the Act is whether the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that the Commissioner should evaluate disability claims according to the following sequential five-step process:

(1)    a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are;

(2)    a claimant will not be found to be disabled unless he has a "severe impairment;"

(3)    a claimant whose impairment meets or is equivalent to an impairment listed in [the Listings] will be considered disabled without the need to consider vocational factors;

(4)    a claimant who is capable of performing work he has done in the past must be found "not disabled;" and

(5)    if the claimant is unable to perform his previous work as a result of his impairment, then factors such as age, education, past work experience, and residual functioning capacity must be considered to determine whether he can do other work.

20 C.F.R. § 404.1520(b)-(f)*; see also Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

To be entitled to benefits, a claimant bears the burden of proving that she is unable to engage in substantial gainful activity within the meaning of the Act. *See Wren v. Sullivan,* 925 F.2d 123, 125 (5th Cir. 1991) (citing *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985)). The claimant must show that she suffers from a mental or physical impairment that not only renders her unable to perform her previous work, but, given her age, education, and work experience, prevents her from engaging in any other kind of substantial gainful work which exists in the national economy,

5

regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work. *Johnson v. Harris*, 612 F.2d 993, 997 (5th Cir. 1980) (quoting *Rhynes v. Califano*, 586 F.2d 388, 389-90 (5th Cir. 1978)). However, if the claimant can show that she can no longer perform her previous job, the burden then shifts to the Commissioner to show that there exists some other form of substantial gainful employment that the claimant can perform. *Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980); *Johnson*, 612 F.2d at 997. By judicial practice, this translates into the claimant bearing the burden of proof on the first four of the above steps and the Commissioner bearing it on the fifth. *See Brown*, 192 F.3d at 498; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987)). The analysis stops at any point in the five step process upon a finding that the claimant is or is not disabled. *See Greenspan*, 38 F.3d at 236.

**Discussion**

In the unfavorable decision, the ALJ determined that Griffin met the nondisability requirements for a period of disability and disability insurance benefits.[19] He then followed the five step process outlined in the regulations. At the first step, he found that Griffin had not engaged in substantial gainful activity since the alleged onset of her disability, August 3, 2000.[20] At step two, the ALJ determined that Griffin had an impairments (i.e., Paget's disease and degenerative disk disease) that constituted severe medically determinable impairments.[21] At the third step, the ALJ determined that Griffin's severe impairments did not meet or medically equal one of the listed

---

[19] *Id.* at 22.

[20] *Id.*

[21] *Id.*

impairments in 20 C.F.R. Pt. 404, Subpart P, Appendix 1.[22]  At step four, the ALJ determined that

Griffin is unable to perform any of her past relevant work.[23]  Proceeding to the final step of the

analysis, the ALJ found that, based upon her age, educational background, work experience, and

residual functional capacity ("RFC"), Griffin was still capable of performing the full range of light

work.[24]  Specifically, the ALJ found that Griffin has the residual functional capacity to:

> lift, carry, push, and/or pull 20 pounds occasionally, and 10 pounds frequently, sit
> six hours out of an eight hour workday (with normal breaks), stand and walk six
> hours out of an eight hour workday (with normal breaks), with no climbing of
> ladders, ropes or scaffolds, and limited to occasional stooping, kneeling, crouching
> and crawling, with no impact activity (i.e., jumping and/or running).[25]

Griffin requests judicial review of the ALJ's decision to deny disability benefits.  She argues

that the Commissioner's decision was not based on substantial evidence and is based upon an

erroneous application of the law to the facts of her case.[26]  Specifically, Griffin argues that the ALJ

erred by (1) improperly ignoring and rejecting the opinion of her treating physician that she was

disabled and (2) failed to consider and articulate the factors set forth in 20 C.F.R. § 404.1527(d).

The Court will address Griffin's arguments in turn.

## I.    Assertion That the ALJ Improperly Ignored and Rejected The Opinions of Her Treating Physicians

Griffin asserts that the ALJ improperly ignored and rejected the opinions of her treating

physician, neurologist Dr. Christopher Chaput.  Griffin puts great emphasis on the following

---

[22] *Id.*

[23] *Id.* at 23.

[24] *Id.*

[25] *Id.* at 19.

[26] Pl.'s Mot. for Summ. J., pg. 1.

passages from Dr. Chaput's narrative report dated December 15, 2000:

> Mrs. Vollie Griffin was seen in the office today to discuss . . . treatment of her . . . isolated Paget's disease.  After discussing this case at length with Dr. Scott Stein, rheumatologist, as well as several orthopedic surgeons and our pulmonary consultant, it is the consensus of opinion that isolated Paget's disease such as seen in this case, should be treated aggressively with drugs such as Fosamax or even Cyoxan and Fosamax.  This is necessary to strengthen the intrinsically weak vertebral body which is completely involved with the Paget's disease as well as to monitor the patient for the late development of sarcomatous degeneration of the Paget's lesion.
>
> . . . She also asked whether or not she should continue working.  It is my opinion that the completely involved fifth lumbar vertebrae by Paget's disease including not only the vertebral body centrum but the transverse processes, the spinous processes and articular facets constituted a very weak segment in her spinal axis.  She is at extreme danger of fracturing this bone with minor trauma in the work place.  In addition, she has considerable pain generated by this inherent weakness and this pain is exacerbated by all forms of physical activity, especially bending, stooping and lifting.  I have therefore recommended that she seek medical retirement and disability.[27]

Griffin also emphasizes that Dr. Chaput stated on two occasions that Griffin is disabled.[28]  She also refers to the following statement of Dr. Chaput:

> This lesion is so unusual that I have never seen a similar case in over 30 years of neurosurgery.  I have polled the orthopedic surgeons in Victoria and none have seen a similar case.  In my opinion, this is probably a reportable case and I plan to research the literature carefully . . . .[29]

In addition to her emphasis on the passages outlined above, Griffin also argues that the ALJ's opinion completely ignored Dr. Chaput's opinion that she was a "high risk patient" and permanently disabled from performing any work.[30]  The Commissioner responds to Griffin's argument by

---

[27] Tr. at 126.

[28] *Id.* at 110, 126.

[29] *Id.* at 128.

[30] *Id.* at 110.

asserting that the ALJ properly considered and discounted Dr. Chaput's opinions on Griffin's ability to work because they were not supported by the total record evidence.

To Griffin's credit, the regulations do state that, normally, a treating physician's opinion regarding the nature and severity of a patient's impairment will be given controlling weight. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (internal quotations omitted).  But this is so only if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence.  *Id.* (citing *See Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995)); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  The regulations also state that an evaluation by the claimant's treating physician should be accorded great weight. *Martinez*, 64 F.3d at 176 (citing *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir.1994), *cert. denied*, 514 U.S. 1120, 115 S. Ct. 1984 (U.S. 1995)).  The ALJ ultimately may give less weight to the medical opinion of a treating physician when his statements are conclusory, unsupported, or otherwise incredible.  *See Greenspan*, 38 F.3d at 237.

Even though the treating physician's medical opinion diagnosis should be afforded considerable weight, the "'the ALJ has sole responsibility for determining a claimant's disability status.'"  *Martinez*, 64 F.3d at 176 (quoting *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir.1990)); *See also Frank v. Barnhart* 326 F.3d 618, 620 (5th Cir. 2003) (per curiam) ("Among the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work' . . . [t]hese determinations are legal conclusions that the regulation describes as 'reserved to the Commissioner.'" (citations omitted)); *Barajas v. Heckler*, 738 F.2d 641, 645 (5th Cir. 1984) (a treating physician's statement that an individual is disabled does not mean that she is disabled within the meaning of the Social Security Act).  The determination of disability is not a medical opinion entitled to deference, but a legal conclusion within the Commissioner's scope of

authority.  *Frank*, 326 F.3d at 620.

  The Court notes that upon reviewing his decision, it is clear that the ALJ did consider Dr. Chaput's opinions and the opinions of other doctors in the record.  For instance, the ALJ acknowledged that Dr. Chaput had spoken with Dr. Scott Stein, several other orthopedic surgeons, and a pulmonologist, and that the consensus was that she should be treated aggressively with Fosamax to strengthen her vertebral body.[31]  The ALJ also referred to Dr. Chaput's statement that Dr. Stein was to manage Griffin's case, see her periodically, and perform serial MRIs.  Additionally, the ALJ referenced the transcript at page 126, Exhibit 1F64, which is Dr. Chaput's letter dated December 15, 2000, in which he opined that Griffin was in extreme danger of fracturing her spine with minor trauma, that her pain would be exacerbated by all forms of physical activity, especially bending, stooping, and lifting, and that she was disabled.[32]  The ALJ also referred to the transcript at page 110, Exhibit 1F80, which is a medical release/physician's statement dated February 9, 2001, in which Dr. Chaput opines that Griffin has been permanently disabled as of October 2000 and is unable to work.[33]  Finally the ALJ also referenced a statement from Dr. Dimitry Nesen, who opined that Griffin should avoid "impact physical activities" such as jumping and running due to the possibility of a fracture of the affected vertebrae.[34]  Contrary to Griffin's assertion, it is clear that the ALJ did consider Dr. Chaput's opinions as well as those of other physicians.

  As set forth in the Commissioner's motion for summary judgment, it does not matter what diagnosis is made, or whether a physician, such as Dr. Chaput, opines that a claimant is disabled,

---

[31] *See id.* at 17.

[32] *See id.* at 17, 20, 126.

[33] *See id.* at 17-18, 110.

[34] *Id.* at 109.

that her impairment is "unusual," or that she is a "high risk patient." *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) (noting that the mere identification or diagnosis of a medically determinable condition does not establish disability *per se* and stating that the proper focus in assessing a claim of disability is the degree to which the condition functionally impairs the plaintiff); *see also Greenspan*, 38 F.3d at 237 (an ALJ is entitled to determine the credibility of medical experts and weigh their opinions accordingly); *Moore*, 919 F.2d at 905 (the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion).

In this case, the ALJ found that the medical records did not support Griffin's complaints and found that Griffin was not wholly credible.[35]  Referring to the record, the ALJ noted that Griffin had a history of back pain for ten years.[36]  He noted that on August 3, 2000, Griffin fell and experienced back pain.[37]  The ALJ noted that an x-ray revealed degenerative disk disease, but that a physical examination performed on August 18, 2000 was negative.[38]

The ALJ noted that Dr. Chaput performed a detailed neurological and orthopedic examination on October 31, 2000.[39]  On that date, Dr. Chaput reported that Griffin was "100% normal."  However, Dr. Chaput asked Griffin to return in one month for a follow-up MRI because of abnormal bone intensity shown on her MRI.[40] On November 7, 2000,  Dr. Chaput stated that there

---

[35] *Id.* at 19, 20.

[36] *Id.* at 19.

[37] *Id.*

[38] *Id.*

[39] *Id.* at 19, 150.

[40] *Id.*

11

was no difference between her first and second scans and thus ordered a needle biopsy.[41]  Again, Dr. Chaput noted that Griffin's neurological examination was normal.[42]  On November 21, 2000, the results of the needle biopsy showed that Griffin had Paget's disease of the bone.[43]  On December 5, 2000, Dr. Chaput stated that multiple diagnostic studies were performed which returned as normal and that Griffin was "now totally asymptomatic."[44]  On February 8, 2001, Griffin was reexamined by Dr. Chaput, who found that "under her treatment so far," Griffin's pain had "lessened significantly."[45]  Based upon the record, it appears that Dr. Chaput gave inconsistent statements within a short time frame.  The ALJ had good cause to discount  Dr. Chaput's opinions.

Moreover, there exists competing medical evidence that conflicts with Dr. Chaput's opinions.  On February 22, 2001, Griffin saw Dr. Stein complaining of severe pain.[46]  However, her physical examination and neurological examination were negative.[47]  In his report, Dr. Stein also noted that Griffin was able to "negotiate the examining table without difficulty."[48]  *See Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000) ("Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques,

---

[41] *Id.* at 20, 147.

[42] *Id.* at 17, 147.

[43] *Id.* at 17, 130.

[44] *Id.* at 17, 128.

[45] *Id.* at 20, 227.

[46]  *Id.* at 20, 102.

[47] *Id.* at 20, 103.

[48] *Id.*

or is otherwise unsupported by the evidence.").

Other evidence supporting the ALJ's decision are the results from an examination performed by Dr. Daniel P. Dugi, which were normal and revealed that Griffin had a full range of motion and that her straight leg raising tests were negative bilaterally.[49]   Progress notes from Dr. Stein also reveal that Griffin's treatment regimen and medications helped relieve symptoms.[50]   Additionally, Dr. Stein's examination report dated February 22, 2001, reported no focal deficits, cyanosis, clubbing, or edema.[51]   Finally, at the hearing, the medical expert reviewed all of the medical evidence and concluded that though Griffin could fracture her bones if she engaged in heavy or medium work, she could engage in a reduced range of light work.[52]   In light of this competing medical evidence, the ALJ properly discounted the opinions of Griffin's treating physicians.

The ALJ also considered Griffin's complaints that she had severe low back pain, a weak back, that she experienced pain when walking or standing, and had symptoms that affected her ability to sit, lift, and carry.[53]   Griffin testified that on a scale of one to ten, her pain was at eight-and-a-half every day.[54]   The ALJ, however, found Griffin not to be "wholly credible."[55]   He found that the fact she is able to read thirty minutes at a time and is generally able to concentrate during that

---

[49] *Id.* at 19, 188-89, 225.

[50] *Id.* at 192.

[51] *Id.* at 102-03.

[52] *See id.* at 276.

[53] *Id.* at 20.

[54] *Id.* at 266.

[55] *Id.* at 20.

time, "is not indicative of constant '8 to 10' pain."[56]  He also referred to the activities she is able to engage in, including taking care of her personal needs, cooking, driving, and attending church services where she is able to sit and stand during the service.[57]

## II.    Assertion That the ALJ Did Not Properly Evaluate Griffin's Stress, Anxiety, and/or Depression

In support of her argument that the ALJ failed to consider her stress, anxiety, and/or depression, Griffin points to Dr. Stein's evaluation dated February 22, 2001.[58]  In that evaluation, Dr. Stein noted that Griffin "has had significant weight loss throughout all of this, probably most attributable to stress and anxiety."[59]  However, Dr. Stein did not specifically diagnose Griffin with a mental health disorder.  Additionally, on her disability report, Griffin noted that she had no significant mental or emotional problems, that her mental or emotional problems did not affect her day to day living or work, and that she had never received any mental or emotional treatment.[60]  Further, when the ALJ asked Griffin if she had ever been under the care of a psychiatrist or psychologist or whether she had ever been in a mental hospital, Griffin replied "No."[61]  In light Griffin's failure to produce evidence of her mental and/or emotional impairments and her failure to bring attention to the issue before the ALJ, her claim that the ALJ's opinion lacks mention of these impairments is specious.

---

[56] *Id.* at 21.

[57] *Id.*

[58] *Id.* at 102-04.

[59] *Id.* at 102.

[60] *Id.* at 80.

[61] *See id.* at 255.

**III.      Assertion That the ALJ Failed to Discuss the Factors Found in 20 C.F.R. § 404.1527(d)**

Griffin argues that the ALJ erred by failing to consider the factors set forth in 20 C.F.R. § 404.1527(d).  Social Security Ruling 96-2p mandates that, when deciding to discount the opinion of a treating physician, the ALJ must indicate the specific reasons for discounting the treating source's medical opinion.  *See* Social Security Ruling 96-2p (1996), 1996 WL 374188, at *5 (S.S.A. July 2, 1996).  In presenting her argument, Griffin cites *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000).  In *Newton*, the Fifth Circuit held that an ALJ is required to consider each of the factors set forth in 20 C.F.R. § 404.1527(d).  The Fifth Circuit held that this analysis must be performed "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist."  *Newton*, 209 F.3d at 453.  The *Newton* court also noted that "[t]his is not a case where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another."  *Id.* at 458.  The Fifth Circuit also noted that it was not confronted with a case in which "the ALJ weigh[ed] the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion. " *Id.*  As the Fifth Circuit elaborated, *Newton* was, "[i]nstead . . . a case where the ALJ summarily rejected the opinions of [the claimant's] treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant."  *Id.*

*Newton*'s holding does not apply to the facts of the instant case, because this is not a situation where the ALJ rejected an opinion of a treating physician based solely upon a non-specialist, non-examining physician.  In this case the medical record contained competing evidence from Dr. Stein and Dr. Dugi, who were both examining/treating physicians.[62]  Dr. Stein and Dr. Dugi indicated that

---

[62] *See id.* at 102-03, 192; *see also id.* at 19, 188-89, 225.

Griffin's Paget's disease and degenerative disk disease were not completely disabling.  In short, Dr. Stein's and Dr. Dugi's reports controverted Dr. Chaput's conclusions.  *Cf. Newton*, 209 F.3d at 453. Therefore, the ALJ did not err by not specifically addressing all of the factors set forth in 20 C.F.R. § 404.1527(d).

The Court concludes that the findings relied upon by the ALJ constitute more than a mere scintilla of evidence to support his finding that Griffin's impairments were not disabling as defined under 20 C.F.R. § 404.1520(f) and 416.920(f).  Thus, the Court must uphold the ALJ's conclusion that Griffin's impairments were not sufficient to prevent substantial gainful employment.

## CONCLUSION

For the foregoing reasons, Griffin's Motion for Summary Judgment (Dkt. #14) is DENIED and the Commissioner's Motion for Summary Judgment (Dkt. #16) is GRANTED.  The Court shall enter a final judgment on even date herewith.

It is so ORDERED.

SIGNED on this 11th day of January, 2006.

JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE